# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| DENIRO CROCKETT, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-14-0157 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Deniro Crockett, proceeding *pro se,* filed a section 2254 habeas petition challenging his conviction and forty-year sentence for aggravated robbery. Respondent filed a motion for summary judgment (Docket Entry No. 9), to which petitioner filed a response (Docket Entry No. 11).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background and Claims*

Petitioner was convicted of aggravated robbery and sentenced to forty years incarceration on June 4, 2010. The conviction was affirmed on appeal in *Crockett v. State*, No. 01–10–00467–CR, 2011 WL 4925980 (Tex. App.— Houston [1st Dist. Oct. 13, 2011, pet. ref'd). The Texas Court of Criminal Appeals denied discretionary review, and denied petitioner's application for state habeas relief.

Petitioner filed the instant federal habeas petition on January 21, 2014, raising the following claims for federal habeas relief:[1]

(1) Petitioner's pretrial out-of-court lineup was unnecessarily suggestive.

(2) Trial counsel was ineffective in failing to object to the introduction of the out-of-court lineup testimony, failing to request the State to present the video recording of the lineup, failing to cross-examine the State's witnesses about the identifications, and failing to object to the lineup procedure and confrontation.

Respondent argues that these claims are without merit and should be dismissed.

*Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction:

> In early October 2008, cashiers Tamara Grayson and Lataysha Hillsman were counting the money in their registers at a Houston convenience store/gas station prior to closing at 9:00 p.m. Grayson testified that appellant, Deniro Crockett, approached her, pulled a big silver handgun from his waistband, and demanded the cash from her register. Hillsman testified that Crockett laid the gun on the counter and pointed it at Grayson while he was robbing Grayson.
>
> After Grayson gave him all the cash in her register, Crockett then turned to Hillsman, who had the money she was counting in her hands. Hillsman testified that Crockett again laid the gun on the counter, leaned on the counter with the gun pointed at her, and demanded the cash from her register, as well. She complied. Both Hillsman and Grayson closely observed Crockett during the robbery. Grayson, in fact, testified that she would never forget his face.

---

[1] Petitioner voluntarily waived his claim that the State withheld evidence of an unnecessarily suggestive pretrial out-of-court lineup video recording at the suppression hearing. (Docket Entries No. 10, 12.)

After getting the cash from both registers, Crockett left the store. Hillsman testified that Crockett drove off in a gray four-door car which she believed was a Grand Am or a Grand Prix. Grayson or Hillsman then called the police. When Officers Richardson and Hadley arrived, both cashiers reported the robbery and described the suspect and vehicle.

The following day, Officer Terrell of the Houston Police Department was dispatched to another robbery at a Family Dollar store located in the same part of Houston. Keely Bryant, the assistant manager of the store, testified that while she was counting the cash, an armed man approached her and demanded it. She described how he laid the gun on the counter pointed towards her. When she refused to give him the cash, he fled in a gray Grand Am, the license plate number of which she noted, along with a description of the vehicle and the man who attempted to rob her. At trial, Bryant identified Crockett as that man.

Officer Terrell put out a general broadcast for the getaway vehicle, and later that day, Officer Lopez spotted the car and followed it. Crockett was apprehended and arrested when he stopped the car and ran. The following day, Grayson viewed a line-up of suspects, and after observing and hearing them speak, she immediately identified Crockett. Hillsman also identified Crockett in court.

Crockett's sister, Lynn Harris, testified that he picked her up from work at about 7:45 on the evening of the robbery and that she was with him until 4:00 the following morning. Harris also testified that she would lie for her brother, though she qualified that statement to claim that she would not lie in a criminal matter.

The jury found Crockett guilty as charged and assessed punishment at 40 years' confinement and a $2,000 fine.

*Crockett*, at *1–2.

### The Applicable Legal Standards

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA,

3

federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility

4

> fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.* (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### *Pretrial Out-of-Court Lineup*

Petitioner contends that his pretrial out-of-court lineup was unnecessarily suggestive and denied him due process. According to petitioner, police allowed Hillsman to view the video recording of Grayson's identification of petitioner, and that on the video recording, Grayson can be heard commenting that the robber had had a "grill" in his mouth. Without regard to procedural default, the Court will review this claim as the claim has no merit.

Federal due process protects accused individuals from unreliable identifications resulting from impermissibly suggestive procedures. *See*, *e.g.*, *United States v. Sanchez*, 988 F.2d 1384, 1389 (5th Cir. 1993). The admissibility of identification evidence involves a two-step analysis: (1) whether the identification procedure was impermissibly suggestive, *United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990); and (2) whether, under the totality

6

of the circumstances, the procedure posed a substantial likelihood of irreparable misidentification. *Id.* Factors to be considered in determining the likelihood of misidentification include the opportunity of the witness to view the perpetrator; the witness's degree of attention; the accuracy of the witness's prior description; the level of certainty demonstrated at the confrontation; the length of time between the crime and the confrontation; and the corrupting effect of the suggestive identification itself. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Furthermore, if the in-court identification has an origin independent of the improper identification procedure, it is still admissible. *United States v. Crews*, 445 U.S. 463, 472–73 (1980); *Doescher v. Estelle*, 616 F.2d 205, 206 (5th Cir. 1980) (holding that "any taint in pretrial identification is immaterial where, as here, the witnesses' in-court identification is based upon observation during commission of the crime"). Petitioner's contention that Hillsman would have not been able to identify him in absence of Grayson's "grill" comment is conclusory, speculative, and unsupported in the record. Moreover, in committing the criminal offense, petitioner pointed a firearm at Hillsman and demanded her money. He also pointed a firearm at Grayson and demanded her money. Hillsman and Grayson were in the same area of the store during the offense and observed petitioner for ten to fifteen minutes. At trial Hillsman testified to her in-court identification of petitioner as arising from the robbery itself:

> Q. So how do you know that the defendant sitting here today is the one that robbed you back on [*sic*] October of 2008?

7

> A. Somebody pulls a gun on you, you never going to forget that.
>
> Q. So you've never forgotten his face?
>
> A. No, ma'am.
>
> Q. When he did come to your cash register, could you see his face clearly?
>
> A. Yes, ma'am.
>
> Q. Were you looking right in his face?
>
> A. Yes, ma'am.

R.R. Vol. 4, p. 128.

Although petitioner did not directly challenge the out-of-court identification procedure on direct appeal, the intermediate state court of appeals made the following observations in its opinion affirming petitioner's conviction:

> Here, both Hillsman and Grayson were eye-witnesses to the robbery. Both women testified that they observed appellant for ten to fifteen minutes while the robbery took place. Additionally, each gave specific descriptions of appellant and each positively identified appellant in court as the robber. Grayson testified that she "will never forget his face." Hillsman testified that when "someone pulls a gun on you, you never going to forget that." Furthermore, at the line-up two days after the robbery, Grayson was able to hear appellant's voice as well as see him. Grayson immediately identified appellant from the lineup.

*Crockett*, at *3.

In rejecting petitioner's claim on collateral review, the trial court expressly found that, "The applicant does not demonstrate that the photo lineup was impermissibly suggestive." *Ex parte Crockett*, p. 37. The Texas Court of Criminal Appeals expressly relied on this finding in denying habeas relief. *Id.*, at cover.

A habeas claim that presents "conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Petitioner fails to establish that Hillsman would have been unable to identify him had Grayson not mentioned a "grill" on the video recording. Petitioner fails to establish that his lineup procedure was impermissibly suggestive or resulted in an improper identification; thus, he fails to show the state court's decision was contrary to or an unreasonable application of federal law.

Even if this Court were to assume that the out-of-court identification procedure in this case was impermissibly suggestive, petitioner does not show that it presented a substantial likelihood of misidentification under the totality of the circumstances presented in the record.

The state court denied relief on this claim. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Ineffective Assistance of Trial Counsel*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient

9

performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

10

Petitioner contends that trial counsel was ineffective in failing to object to the out-of-court lineup, failing to use the video recording of the lineup; failing to cross-examine identification witnesses; and failing to object to lineup procedure and confrontation.

In rejecting these claims on collateral review, the state trial court made the following findings of fact:

8. The applicant does not demonstrate that the photo lineup was impermissibly suggestive.

9. The applicant does not demonstrate that, had counsel objected to the photo lineup, the trial court would have sustained the objection.

10. The applicant does not demonstrate that the witnesses' in-court identifications were improper.

11. The applicant does not demonstrate that, had counsel objected to the in-court identifications, the trial court would have sustained the objections.

12. The applicant does not demonstrate that, had counsel objected to the photo lineup and/or the in-court identification and had the trial court sustained the objection, there was a substantial likelihood that the outcome of the case would have been different.

13. The Court finds that the affidavit of [trial counsel], filed in this instant proceeding is credible, and the facts asserted therein are true and correct.

\* \* \* \*

27. [Trial counsel's] investigation included reviewing the State's file, reviewing the police offense reports, reviewing the witness statements, speaking with the applicant in detail about the primary case, reviewing the photo lineup, and all items of evidence which the State may offer into evidence during trial.

28. Because the question before a court for a photo lineup is whether it is impermissibly suggestive, [trial counsel's] review of the lineup in the primary case—which included voice identification—focused on this issue.

29. The photo lineup was not impermissibly suggestive.

30. [Trial counsel's] investigation revealed that the State had two (2) eye witnesses; [trial counsel] expected both witnesses would be called to testify and identify the applicant at trial.

31. At trial, both witnesses testified that they closely observed the applicant for ten (10) to fifteen (15) minutes while the aggravated robbery took place both gave specific description of the applicant, and both positively identified the applicant in open court as the robber.

32. [Trial counsel] does not believe that had he objected to the photo lineup or the in-court identification, the trial court would have sustained the objection.

*Ex parte Crockett*, pp. 37, 39. The trial court further made conclusions of law that trial counsel's representation was neither deficient nor prejudicial. *Id.*, pp. 41–45.

All of these claims for ineffective assistance depend on a finding or determination that Grayson's comment regarding the robber having a "grill" resulted in an unnecessarily suggestive line-up procedure. This Court has already rejected this underlying habeas claim. Consequently, petitioner establishes neither deficient performance nor actual prejudice under *Strickland*, and his claims for ineffective assistance of trial counsel are without merit.

The state court rejected these issues on collateral review and found that trial counsel provided constitutionally effective assistance. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was

12

an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

## *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 9) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE. A certificate of appealability is DENIED. Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on December 5, 2014.

Gray H. Miller
United States District Judge